IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRITZNER SAINT CLOUD | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| J.L. JAMISON, Warden, Federal | : | |
| Detention Center Philadelphia, ET AL. | : | NO. 26-7438 |

**MEMORANDUM**

**Padova, J.** **October 19, 2026**

Petitioner Fritzner Saint Cloud is a citizen from Haiti who entered the United States on July 2, 2024 without inspection, and was released on humanitarian parole.[1] (Pet'n ¶ 1.) Last month, Saint Cloud was arrested without a warrant in a Walmart parking lot, and he has been in immigration custody ever since. (Id. ¶¶ 4, 21, 42.) Saint Cloud has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. He seeks release from custody, arguing that he should be released because he was not provided a timely, meaningful individualized custody determination following his arrest.[2] The Government opposes the Petition, arguing that Saint Cloud has failed to exhaust his administrative remedies, was properly arrested without a warrant pursuant to § 1357(c) of the Immigration and Nationalities Act ("INA"), 8 U.S.C. § 1357), and has been legally detained pursuant to § 1226(a) of the INA, id. § 1226(a). For the following reasons, we conclude that the Government's extended detention of Saint Cloud without conducting an

[1] The Immigration and Nationalities Act provides that "[t]he Secretary of Homeland Security may . . . in his discretion parole into the United States temporarily . . . for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States . . . ." 8 U.S.C. § 1182(d)(5)(A).

[2] Saint Cloud's initial Petition was vague, as he was unsure of the authority by which the Government had both arrested and detained him. He therefore requested that the Government produce its records regarding his arrest and custody. The Government did so in conjunction with its Response to the Petition and, in a Reply Brief, Saint Cloud effectively narrowed his claim to that which we now consider.

individualized custody determination was unlawful, and we therefore order Saint Cloud's immediate release.

## I. BACKGROUND

Saint Cloud arrived at the Fort Lauderdale-Hollywood International Airport on July 2, 2024. (Gov't Ex. D at 2-3.) He was paroled into the United States under the Cuba, Haiti, Nicaragua, and Venezuela ("CHNV") parole program for a period of two years. (Id. at 3.) He filed an asylum application on March 23, 2025. (Pet'n ¶¶ 3, 18.) On May 30, 2025, the CHNV parole program was terminated. (Gov't Ex. D at 3.)

Saint Cloud is 35 years old and has been living in Phillipsburg, Pennsylvania. (Gov't Ex. D at 1.) He has no known criminal record or outstanding warrants, and has a minor child who is a United States citizen. (Id. at 2-3; Pet'n ¶ 20.) On September 21, 2026, immigration officers conducted a "targeted enforcement operation" at 180 Levittown Center in Levittown, Pennsylvania, where a Walmart store is located. (Gov't Ex. D at 2; Pet'n ¶ 21.) The officers had with them a description of Saint Cloud. (Gov't Ex. D at 2.) During that operation, an officer pulled up next to an individual meeting Saint Cloud's description, who was cleaning out the trunk of his vehicle. (Id.) The officer "was able to obtain a positive identification" that the individual was Saint Cloud. (Id.) Multiple officers then approached Saint Cloud in their vehicles, and Saint Cloud ran. (Id.) Amidst calls for him to stop, Saint Cloud fell to the ground, and the officers placed him in restraints. (Id.) Saint Cloud was then transported "without incident" to the field office for processing. (Id.)

Later that day, Saint Cloud was charged with being removable pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(1), for being an immigrant without appropriate documentation.[3] (Gov't Ex. A at

---

[3] See 8 U.S.C. § 1182(a)(7)(A)(i)(1) (deeming an immigrant inadmissible if at the time of

4.) Based on both the charging documents initiating removal proceedings and purported evidence that Saint Cloud either lacks immigration status or is removable notwithstanding his status, the immigration officer who signed the charging documents also determined that there was probable cause to believe that Saint Cloud was removable, and he issued a post-arrest arrest warrant. (See Gov't Ex. C.) Saint Cloud was simultaneously ordered to appear at a removal hearing before an immigration judge in New Jersey on October 5, 2026. (Gov't Ex. A at 1.) The September 21, 2026 paperwork states without further explanation that Saint Cloud "will be detained without bond at this time." (Gov't Ex. D at 3.)

Saint Cloud filed his Petition for Writ of Habeas Corpus on September 26, 2026, seeking release from detention at the Federal Detention Center in Philadelphia (the "FDC"). On September 28, 2026, we ordered that he not be transferred out of the Eastern District of Pennsylvania pending our resolution of his Petition. The next day, on September 29, 2026, which was eight days after Saint Cloud's arrest and detention, a deportation officer issued a "Notice of Custody Determination," declining to release Saint Cloud on bond and instead ordering Saint Cloud detained by the Department of Homeland Security pursuant to § 1226, without further explanation as to the reason for Petitioner's past and continued detention and the refusal of bond. (Gov't Ex. B.) Saint Cloud signed the Notice of Custody Determination, acknowledging its receipt, and requested review by an immigration judge. (Id.)

## II. LEGAL STANDARD

We are empowered to grant habeas relief to a petitioner who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). This includes

---

his application for admission he "is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document . . ., and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under [certain] regulations").

the power to grant relief to noncitizens, because "[t]he writ of habeas corpus has always been available to review the legality of Executive detention," and it has "regularly [been] invoked on behalf of noncitizens, particularly in the immigration context." INS v. St. Cyr, 533 U.S. 289, 305 (2001) (citations omitted). The burden is on the petitioner to show that he is entitled to habeas relief. Brown v. Cuyler, 669 F.2d 155, 158 (3d Cir. 1982) (citation omitted).

## III. DISCUSSION

Saint Cloud seeks immediate release, arguing that he has not received a timely, meaningful, individualized custody determination following his September 21, 2026 arrest, in violation of the INA and his Fifth Amendment procedural due process rights. The Government argues that we should dismiss the habeas petition because Saint Cloud has not exhausted his administrative remedies for challenging his detention and because Saint Cloud was lawfully detained pursuant to 8 U.S.C. § 1226(a).

### A. Exhaustion of Administrative Remedies.

"Although there is no statutory exhaustion requirement attached to § 2241, [the Third Circuit has] consistently applied an exhaustion requirement to claims brought under § 2241." Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000) (citation omitted); see also Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996)). When exhaustion is not statutorily required, it is a matter of "sound judicial discretion." Cerro Metal Prods. v. Marshall, 620 F.2d 964, 970 (3d Cir. 1980). In exercising that discretion, we will excuse exhaustion "if administrative remedies would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury." Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (citing Babcock & Wilcox Co. v. Marshall, 610 F.2d 1128, 1138 (3d Cir. 1979)).

The Government argues that habeas relief is prohibited here because Saint Cloud has not yet exhausted his administrative remedies by pursuing a bond hearing before an immigration judge and then appealing any unfavorable decision to the Board of Immigration Appeals. However, we conclude that exhaustion is futile because the immigration courts do not have the authority to adjudicate Saint Cloud's constitutional due process challenge to the procedures by which he was detained. See Basboga v. Jamison, Civ. A. No. 26-6694, 2026 WL 3033623, at *3 (E.D. Pa. Oct. 9, 2026) (citing Qatanani v. Att'y Gen. United States of Am., 144 F.4th 485, 499-500 (3d Cir. 2025); Mudric v. Att'y Gen. of U.S., 469 F.3d 94, 98 (3d Cir. 2006)); see also Xioadong Ma v. Warden of Adelanto ICE Processing Ctr., Case No. EDCV 26-05707-KK-DFMx, 2026 WL 3034590, at *1 n.2 (C.D. Cal. Oct. 8, 2026) (excusing administrative exhaustion as futile where "constitutional claims are outside the jurisdiction of immigration courts" (citation omitted)). Indeed, constitutional claims are beyond the BIA's jurisdiction. Vargas v. U.S. Dep't of Immigration & Naturalization, 831 F.2d 906, 908 (9th Cir. 1987) (recognizing that "the BIA does not have jurisdiction to adjudicate constitutional issues" (citation omitted) (cited and quoted in Bonhometre v. Gonzales, 414 F.3d 442, 448 n.7 (3d Cir. 2005)).

Moreover, the circumstances of Saint Cloud's own case demonstrate that the administrative processes offered to him have been inadequate to protect against violation of his liberty. As detailed above, Saint Cloud was held in custody for a full eight days, until September 29, 2026, before he was even presented with a Notice of Custody Determination and offered an opportunity to request a bond hearing, which he then did. (Gov't Ex. B.) Notably, this occurred three days after Saint Cloud filed his habeas petition, and just six days before his already-scheduled removal hearing in New Jersey. On October 9, 2026, the Government stated in its brief to this Court that the bond hearing was "awaiting scheduling," but it also indicated that it

must first transfer Saint Cloud to another location in Pennsylvania in order to facilitate that hearing.[4] (Gov't Br. at 8, and proposed order.) It is therefore clear that the limited and delayed administrative remedies offered to Saint Cloud have been, and will be, inadequate to protect against any infringement of his constitutional liberty rights to date. See Dos Reis v. McShane, Civ. A. No. 26-3775, 2026 WL 1746649, at *3 (E.D. Pa. June 17, 2026) (finding administrative exhaustion is not required where "[a] later bond hearing [would] not necessarily cure the alleged constitutional violation that preceded it" (citation omitted)).

For both of these reasons, we excuse Saint Cloud from any obligation to exhaust the administrative remedies now offered and decline to dismiss the Petition for failure to exhaust administrative remedies.

**B. Procedural Due Process**

Saint Cloud asserts that his Fifth Amendment procedural due process rights have been violated by his continued detention without an individualized explanation or determination of the need to detain him. The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Among other things, "[t]he Fifth Amendment entitles aliens to due process of law in deportation proceedings." Borbot v. Warden Hudson Cnty. Corr. Facility, 906 F.3d 274, 275 (3d Cir. 2018) (quoting Reno v. Flores, 507 U.S. 292 (1993).

Under § 1226(a), "[o]n a warrant issued by the Attorney General," a noncitizen "may be arrested and detained pending a decision on whether [he] is to be removed from the United States." 8 U.S.C. § 1226(a). The Attorney General "may continue to detain" the noncitizen or release him

[4] As one court in our District recently observed, "[t]he government has affirmatively chosen to detain [immigrants at the FDC,] a facility that does not facilitate bond hearings in any capacity on behalf of ICE detainees." Melendez-Guzman, v. Jamison, Civ. A. No. 26-7556, 2026 WL 2983704, at *3 (E.D. Pa. Oct. 5, 2026) (quotation omitted).

on bond or conditional parole." Id. In addition, where, as here, a noncitizen is arrested without a warrant pursuant to 8 U.S.C. § 1357(a)(2), the INA's implementing regulations specifically requires "a determination . . . within 48 hours of the arrest, . . . whether the [noncitizen] will be continued in custody or released on bond or recognizance." 8 C.F.R. § 287.3(d).

The regulations further clarify the standard by which a decision should be made to detain or release a noncitizen, stating that "[a]ny officer authorized to issue a warrant of arrest may, in the officer's discretion," release a qualifying noncitizen if the noncitizen "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). This initial custody determination is then subject to review by an immigration judge in a bond hearing and, subsequently, by the Bureau of Immigration Affairs. See 8 C.F.R. § 1236.1(d)(1) ("After an initial custody determination by the district director, . . . the [noncitizen] may . . . request amelioration of the conditions" by application to an immigration judge."); 8 C.F.R. 1236.1(d)(3)(i) (providing for appeal of an immigration judge's custody determination to the BIA). At the bond hearing, which is designed to allow for a "redetermination of custody conditions," the noncitizen's entitlement to release again depends on his ability to show that "release would not pose a danger to other persons or to property" and that he is likely to appear for future proceedings. 8 C.F.R. § 1003.19(h)(3).

Based on this statutory and regulatory law, courts in this District have concluded that the Government is required to make an "individualized custody determination" when it arrests a noncitizen, taking into consideration whether the noncitizen poses a danger to the community and whether the noncitizen is a flight risk. See, e.g., Basboga, 2026 WL 3033623, at *5; Hernandez v. Jamison, Civ. A. No. 26-7607, 2026 WL 3034460, at *3 (E.D. Pa. Oct. 9, 2026) (stating that a noncitizen detained under § 1226 has a "right to an individualized detention determination"

(quotation omitted)); Dos Reis, 2026 WL 1746649, at *4 ("Because Petitioner is detained under § 1226(a), ICE had discretion to detain him or release him on bond or conditional parole, but it had to exercise that discretion through an individualized custody determination.") Here, there is no indication in the record that the Government has yet made any such individualized custody determination. Rather, the documents in the record disclose only that Saint Cloud was taken into custody upon his arrest on September 21, 2021, and that he received written notice that he was being detained pursuant to § 1226(a) (and could request review of his detention) on September 29, 2026. The September 29, 2026 Notice of Custody Determination does not include any explanation of the Government's rationale for detaining him, stating only that his detention was "pursuant to the authority contained in section [1226 of the INA] and part 236 of title 8, Code of Federal Regulations." (Gov't Ex. B.) In the absence of any indication that the Government considered whether Saint Cloud was either dangerous or a flight risk before detaining him for this eight-day period and beyond,[5] we conclude that his rights under the statute have been violated.

To assess whether the lack of an individualized custody determination violated Saint Cloud's Fifth Amendment procedural due process rights, we consider the three factors set forth in Mathews v. Eldridge, 424 U.S. 319 (1976), which are "(1) the interest at stake for the individual noncitizen; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens

[5] The Government asserts that "the evidence demonstrates that ICE conducted an individualized review of [Saint Cloud's] case, including accurately determining that he was present in the United States without lawful status." (Gov't Mem. at 8.) However, this limited explanation suggests reliance on Saint Cloud's immigration status alone, which "amounts to a per se determination that comports not with 1226(a), but with [the Government's] desired policy of detention." Dos Reis, 2026 WL 1746649, at *4 (alteration in original) (quotation and citations omitted). Such a "categorical detention disposition" is simply not an individualized custody determination. Id.

that the additional or substitute procedural requirement would entail.'" B.C. v. Att'y Gen. United States, 12 F.4th 306, 315 (3d Cir. 2021) (quoting Mathews, 426 U.S. at 335).

Here, Saint Cloud's interest at stake is his interest in physical liberty. "[T]he most elemental of liberty interests [is] the interest in being free from physical detention by [the] government." Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004) (citations omitted); Zadvydas v. Davis, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." (citation omitted)). "[I]t is clear that commitment for *any* purpose constitutes a significant deprivation of liberty that requires due process protection." Hamdi, 542 U.S. at 530 (quoting Jones v. United States, 463 U.S. 354, 361 (1983)). We therefore conclude that Saint Cloud's liberty interest here is of the utmost importance.

We also find that, under the circumstances presented, where no individualized custody determination has yet been made, the risk of erroneous deprivation is high. See Buele-Marocho v. Warden Philadelphia FDC, 189 F.4th 287, 307 (3d Cir. 2026) ("[T]he absence of an opportunity for a neutral decisionmaker to assess whether Petitioners are dangerous or flight risks presents a high risk of erroneously depriving Petitioners of their liberty interest." (citations omitted)). The Government argues that the present availability of a bond hearing before an immigration judge protects against this risk. However, the promise of a bond hearing in the future does nothing to guard against unwarranted deprivation of a noncitizen's liberty in the days or weeks preceding that hearing. Indeed, that risk is on full display here, where there is no indication that any individualized custody determination has yet been made and Saint Cloud was not even advised of his right to request a bond hearing until he had been in custody for more than a week. We therefore conclude that, in this case, the facts reveal an unacceptable risk of erroneous deprivation.

Finally, we acknowledge that the Government has a legitimate interest in protecting the community from danger and ensuring that noncitizens appear at their future immigration proceedings.[6] Zadvydas, 533 U.S. at 690 (recognizing the Government's interests in "ensuring the appearance of aliens at future immigration proceedings" and "[p]reventing danger to the community" (alteration in original) (record citation omitted)). However, these legitimate interests can be served by offering the simple procedural protections that the statute and its implementing regulations require. Where, as here, the Government opted to skip these procedural steps by which it can protect those interests while still respecting the constitutional rights of noncitizens, we cannot give significant weight to those professed interests.

On balance, therefore, the Mathews factors weigh in favor of finding a due process violation. We therefore conclude that Saint Cloud's procedural due process rights have been violated by his detention since September 21, 2026, without being afforded a timely, individualized custody determination.

## III. CONCLUSION

Having found that Saint Cloud is being held in custody in violation of his procedural due process rights, the proper remedy is release. See Munaf v. Green, 553 U.S. 674, 693 (2008). We therefore grant Saint Cloud's habeas petition and order that he be released from custody.

BY THE COURT:
/s/ John R. Padova, J.

______________________________
John R. Padova, J.

[6] The Government argues that requiring it to notify a removable noncitizen of its intention to detain him prior to detention undermines the Government's interest in immigration enforcement. (Gov't Mem. at 7.) However, that concern is not implicated by our decision today, as we merely hold that, after its initial warrantless arrest and detention of Saint Cloud, the authorities were required to conduct a prompt individualized custody determination to ascertain whether continued detention was warranted. See 8 C.F.R. § 287.3(d) (providing that a custodial decision is to be made within 48 hours of a warrantless arrest).